UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 5:17-CV-00275-XR |
| | § | |
| QUESADA INVESTMENTS LLC, | § | |
| HECTOR C. QUESADA, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

On this date, the court considered Plaintiff J&J Sports Production's Motion for Entry of Default Judgment. Docket no. 10. After careful consideration, the motion is GRANTED IN PART.

## BACKGROUND

The following background is taken from the allegations in J&J's complaint. Docket no. 1. J&J was a broadcast licensee for the April 12, 2014 boxing match between Manny Pacquiao and Timothy Bradley for the WBO Welterweight Championship (the "Fight"). Docket no. 1 at 3. As broadcast licensee, J&J was authorized to sub-license the closed-circuit telecast of the Fight at closed-circuit venues throughout Texas. *Id.* The closed-circuit broadcast of the Fight could only be televised in venues contractually authorized by J&J. *Id.*

J&J, through its agents, contracted with venues throughout Texas and granted venues the right to broadcast the Fight in exchange for a fee. *Id.* To prevent unlicensed venues from broadcasting the Fight, the transmission of the Fight was coded or "scrambled." *Id.* In order to receive the transmission signal, it had to be decoded with electronic decoding equipment. *Id.* at 4. Defendants, Hector Quesada and Quesada Investments, LLC, did not obtain a license from

1

J&J, but intercepted the transmission signal and broadcasted the Fight to their patrons in a bar that they operate. *Id.* at 2, 4.

On April 3, 2017, J&J filed its complaint against Defendants, alleging that they willfully violated the Federal Communications Act, 47 U.S.C. §§ 553 and 605 ("FCA") for commercial gain. Docket no. 1 at 1. J&J seeks statutory damages under the FCA, attorney's fees, and pre- and post-judgment interest. *Id.*

J&J served both Defendants on May 16, 2017 by personally serving Defendant Hector Quesada, both individually and as the registered agent for Quesada Investments, LLC. Docket nos. 6, 7. According to J&J, Defendant Hector Quesada sent a letter to J&J's counsel on June 15, 2017, but there has been no other contact between the Defendants and J&J. Docket no. 9 at 2. Defendants have not answered or otherwise appeared in this case. Consequently, J&J requested the deputy clerk enter default on June 16, 2017, which the clerk did that day. Docket nos. 9, 11. Also that day, J&J moved for default judgment. Docket no. 10.

## ANALYSIS

### I. Standard of Review

Rule 55(a) provides that a default judgment is proper "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). In considering a motion for default judgment, the court must examine (1) jurisdiction, (2) whether a default judgment is appropriate under the circumstances, (3) liability, and (4) the relief requested. *Gather v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996); *see J&J Sports Prods., Inc. v. Old Town Ranchers, Inc.*, No. 3:16-CV-2104-B, 2017 WL 2404988, at *2 (N.D. Tex. June 2, 2017) (requiring that a default judgment be appropriate given the circumstances and that plaintiff's claim provide a sufficient basis for relief); *see generally Wooten v. McDonald Transit Assocs.,*

*Inc.*, 788 F.3d 490 (5th Cir. 2015) (holding that default judgment was proper where the complaint was well-pleaded and indicated liability, that the court had jurisdiction, and that plaintiff was entitled to the relief awarded).

## II. Analysis

### A. Jurisdiction

This Court has federal question jurisdiction over this case because J&J's claims arise out of the Federal Communications Act of 1934, 47 U.S.C. §§ 553, 605.

The Court also has personal jurisdiction over both defendants. Defendant Quesada Investments LLC is a Texas limited liability company with its principal place of business in Texas. Docket no. 1. Defendant Hector Quesada is an individual resident of the Texas. *Id*.

Finally, the court finds that Defendants have each been properly served with this lawsuit. FED. R. CIV. P. 4(c). An individual may be served by delivering a copy of the summons and of the complaint to the individual personally. FED. R. CIV. P. 4(e)(2)(a). The summons and complaint were delivered personally to Hector Quesada on May 16, 2017. Docket no. 7. As for Quesada Investments LLC, a corporation, partnership, or association may by serving a registered agent, which J&J did by serving Defendant Hector Quesada in his capacity as the LLC's registered agent. *See* FED. R. CIV. P. 4(h).

For these reasons, the court has subject matter jurisdiction over this case and personal jurisdiction over the parties.

### B. Whether Default Judgment is Appropriate

Next, the Court must determine whether the entry of default judgment is "appropriate under the circumstances." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The relevant factors include: (1) whether material issues of fact exist; (2) whether there has been

substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.*

Applying these factors to this case is simple because this is a straightforward default judgment—J&J served both defendants and neither has answered or appeared in this action. There are no issues of fact in this case as defendants have not filed any responsive pleadings. Second, the defendants' failure to respond threatens to prejudice J&J's interests. *See Old Town Ranchers, Inc.*, No. 3:16-CV-2104-B, 2017 WL 2404988, at *2. Third, the defendants have been given sufficient time to either file an answer to the complaint or explain why they have failed to do so, as they have not complied with the standard time limits set forth in the Rules of Civil Procedure. *Id*. Fourth, there is no suggestion that Defendants' default was caused by a good faith mistake or excusable neglect. Fifth, the harshness of a default judgment is relatively small given the statutory damages at issue here and the lack of any applicable defenses (which the Court recognizes may also be a function of Defendants' failure to appear). *Id*. at *2 (citing *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp., Inc.*, No. 12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013)). Finally, the Court is unaware of any facts that would cause the default judgment to be set aside if the defendants eventually sought such relief. All of these factors favor J&J and, therefore, this Court concludes the default judgment is appropriate under the circumstances.

### C. Liability

All well-pleaded allegations of fact are deemed admitted in the default judgment. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Although these facts are accepted as true, the default alone does not warrant entry of default judgment. The court must still determine whether the facts meet the minimum standards set forth by Rule 8 of the Federal Rules of Civil Procedure. *Wooten*, 788 F.3d at 498 ("[W]e draw meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint").

Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotations omitted). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

Plaintiff alleges that Defendants willfully violated FCA §§ 553 and 605 for commercial gain. Docket no. 1. Specifically, Plaintiff claims Defendants willfully intercepted or received the interstate communication of the Fight, or assisted in the receipt of the interstate communication of the Fight. *Id*. Defendants then allegedly transmitted, divulged, and published the Fight to patrons at their venue, or assisted others in doing so. *Id*.

A person violates 47 U.S.C. § 605 when he "intercept[s] any radio communication . . . [or] receive[s] or assist[s] in receiving any interstate or foreign communication by radio and

use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). A person violates 47 U.S.C. § 553 when he "intercept[s] or receive[s] or assist[s] in intercepting or receiving any communications service offered over a cable system" without authorization. 47 U.S.C. § 553.

The unlawful interception and broadcast of cable communications, as alleged by J&J, violates Section 553. *See Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001) (applying Section 553 to unlawful interception and transmission of boxing broadcast). However, the Fifth Circuit has yet to apply Section 605 to a defendant's alleged unlawful interception. *See J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.*, 751 F.3d 346, 352 (5th Cir. 2014). Nevertheless, many courts have held that both Sections 553 and 605 apply to the unlawful interception and broadcast of satellite transmissions. *See, e.g., Old Town Ranchers, Inc.,* No. 3:16-CV-2104-B, 2017 WL 2404988, at *3; *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002); *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131–33 (2d Cir. 1996), *cert. denied*, 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996) (holding that claims of unauthorized broadcasts of cable television transmissions may be brought under both 47 U.S.C. §§ 553 and 605); *Entm't by J&J, Inc. v. Nina's Rest. & Catering*, No. 01 CIV. 5483KMW–RLE, 2002 WL 1000286, at *2–3 (S.D.N.Y. May 9, 2002) (determining that defendant's unauthorized interception and broadcast of a boxing match violated Sections 553 and 605 of the FCA); *Time Warner Cable of N.Y. City v. Taco Rapido Rest.*, 988 F.Supp. 107, 110 (E.D.N.Y. 1997) (determining that both provisions applied when defendant illegally intercepted and broadcast a pay-per-view boxing event); *but see United States v. Norris*, 88 F.3d 462, 468–69 (7th Cir. 1996) (citing H.R. REP. NO. 934 at 83–84, reprinted in 84 U.S.C.C.A.N. at 4720–21) (holding that unauthorized interception of cable television programming traveling "through the

air" is governed by Section 605 while the unauthorized interception of cable television programming through a cable network is governed by Section 553).

This Court agrees with the majority of courts as set forth above, and after reviewing the complaint, concludes that J&J's allegations state a viable claim for relief pursuant to both Sections 553 and 605. J&J's allegations give the defendants "fair notice" of what the claims are and the grounds upon which they rest.

### D. Relief Requested

Although the default judgment establishes the defendants' liability, it does not establish the amount of damages. *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Therefore, J&J must provide an evidentiary basis for the damages it seeks. *See Old Town Ranchers, Inc.,* No. 3:16-CV-2104-B, 2017 WL 2404988, at *3. A default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). The damages amount may be established through detailed affidavits and documentary evidence. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A hearing to determine the amount of damages is unnecessary when that amount can be determined "with certainty by reference to the pleadings and supporting documents alone." *Id*. (quoting *Frame v. S–H, Inc.*, 967 F.3d 194, 204 (5th Cir. 1992)).

#### 1. Statutory Damages

J&J seeks monetary damages under both 47 U.S.C. §§ 553 and 605. However, courts have dealt with violations of both sections by awarding damages only under Section 605 because it allows for greater recovery by the plaintiffs. *See Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 775; *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 127 (2d Cir. 1996). Generally, recovery under both

sections is not available to the plaintiffs. *Al-Waha Enters., Inc.*, F. Supp. 2d at 775. Consequently, this Court will determine damages only under Section 605.

Section 605 provides that a party may recover statutory damages for each violation of subsection 605(a) between $1,000 and $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II). If the court determines that a violation of Section 605 is "committed willfully and for purposes of commercial advantage or private financial gain," the court may, in its discretion, increase the award of damages by an amount up to $100,000. 47 U.S.C. § 605(e)(3)(C)(ii).

Previously, this Court has determined statutory damages under Section 605 by considering the number of patrons present for the broadcasted fight. *J & J Sports Prods., Inc. v. Tejada*, No. 5:13-CV-01020-XR, 2014 WL 869218, at *2 (W.D. Tex. Mar. 4, 2014). Other courts have applied a similar test. *Al-Waha Enters., Inc.*, 219 F. Supp. 2d at 776 ("[B]ecause [plaintiff] has proven, through the uncontroverted affidavit of Jenkins, the presence of seventy-five patrons at [defendant's premises] during the Event, the per-patron approach is an appropriate starting point for calculating damages in this case."). Here, J&J submitted the affidavit of Angel Martinez, who was present at Defendants' venue on the night of the Fight and stated that there were at most 12 patrons at the bar and that the bar had a maximum capacity of 50 patrons. Docket no. 10-1 at 22. According to J&J's "Rate Card," a venue with a capacity of 0 to 100 patrons would have to pay $2,200 to legally broadcast the fight. Docket no. 1-1 at 28. In the past, this Court has awarded actual damages for violations of § 605 in the three times the amount of the cost of legally licensing and broadcasting the fight to account for "'money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight.'" *Tejada*, 2014 WL 869218, at *2 (quoting *Joe*

*Hand Promotions v. Garcia,* 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008)). Accordingly, the Court awards $6,600 in actual damages.

Furthermore, by defaulting, the defendants admit their violation was committed willfully and for the purposes of commercial advantage and private gain. *Tejada*, 2014 WL 869218, at *2. Though J&J seeks $50,000 in additional damages for this willful violation, this amount is excessive in light of the relatively small size of the venue and the relatively few patrons in attendance, especially when considering that Defendants could have legally licensed the fight for up to 100 patrons for only $2,200. *See Kingvision Pay–Per–View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir.1999) ("Depending on the circumstances, a low five figure judgment may be a stiff fine that deters, while a high five figure judgment puts a bar out of business. The range in the statutory award might allow for a sanction that deters but does not destroy."). Accordingly, the Court awards an additional $5,000 based in the willfulness of the violation. In total, the Court awards J&J actual damages in the amount of $11,200.

**2. Attorney's Fees**

Finally, J&J is entitled to recover its reasonable attorney's fees and costs of court incurred in pursuing this action. 47 U.S.C. § 605(e)(3)(B)(iii). J&J submitted an affidavit from its counsel, explaining his fees and seeking a 1/3 contingent fee. Though this Court has previously awarded attorney's fees based on the lodestar method, *see Tejada*, 2014 WL 869218, at *2, a review of the case law indicates that a 1/3 contingent fee is appropriate and reasonable in a case such as this one. *J & J Sports Productions, Inc. v. Casita Guanajuato, Inc.*, A-13-CA-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. Mar. 19, 2014). Accordingly, the Court awards $3,733.33 in attorney's fees. As for potential appellate fees and any post-judgment interest, the Court will consider requests for any such amounts at a later time if necessary.

## CONCLUSION

Plaintiff J&J's motion for default judgment (Docket no. 10) is GRANTED IN PART. J&J is entitled to a default judgment in the amount of $11,200.00 in statutory damages for a willful violation of § 605 and $3,733.33 in attorney's fees. Should J&J desire costs, it should submit an application in accordance with the Local Rules.

It is so ORDERED.

SIGNED this 5th day of July, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE